**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

BRYAN TURNER,

      Plaintiff,

v.                                                                    Case No. 3:19-cv-641-J-32PDB

MIKE WILLIAMS, as Sheriff of City
of Jacksonville and Duval County,
MIKE WILLIAMS, individually,
BILL LEEPER, as Sheriff of Nassau
County, and BILL LEEPER,
individually,

      Defendants.

_____

## O R D E R

    This First Amendment retaliation case is before the Court on Defendant Mike Williams's Motion to Dismiss, (Doc. 9), and Defendant Bill Leeper's Motion to Dismiss, (Doc. 8). Plaintiff Bryan Turner responded in opposition to both motions. (Docs. 17, 18). Additionally, Williams filed a supplemental brief, (Doc. 22), to which Turner responded, (Doc. 25).

## I. BACKGROUND[1]

    Turner brings this eight-count Amended Complaint against Defendants Jacksonville Sheriff Mike Williams in his official and individual capacities, and

_____

[1] These facts, assumed as true, are taken from the Amended Complaint.

Nassau County Sheriff Bill Leeper in his official and individual capacities.[2] (Doc. 7). Turner alleges that in 2008, after working for fourteen years as a deputy sheriff for Nassau County, he retired and began working for the Jacksonville Sheriff's Office ("JSO"). (Doc. 7 ¶ 10). At the time of his retirement from Nassau County, Turner did not receive a retired deputy identification card. Id. In 2016, Turner allegedly "began communicating to everyone he knew, and specifically within [the Nassau County and Jacksonville Sheriff's offices], his intention to run for the position of sheriff of Nassau County in 2020." Id. ¶ 12.

On February 6, 2017, Turner was working undercover for JSO with two other officers when he fatally shot an individual, allegedly in self-defense. Id. ¶¶ 15–20. Immediately following the shooting, the newest member of the team—who was undergoing training—asked Turner if he should dispose of the beer in their vehicle. Id. ¶ 21. Although "the possession—and even ingestion— of beer by undercover officers is specifically permitted by [JSO] as a standard operating procedure," Turner responded "yeah," and the trainee threw the beer into a nearby yard. Id. ¶ 21. After other JSO personnel arrived, Turner was

---

[2] As a suit against a sheriff in his official capacity is really a suit against the entity the sheriff represents, Barnett v. MacArthur, No. 18-12238, 2020 WL 1870445, at *3 (11th Cir. Apr. 15, 2020), this Order will refer to the official capacity defendants as the entities: Jacksonville Sheriff's Office, and Nassau County Sheriff's Office.

interviewed and then placed on paid administrative leave. Id. ¶ 24. On February 12, 2017, the Integrity Division of JSO, which investigates criminal charges against officers, obtained warrants for Turner and the other two team members for tampering with evidence and conspiring to tamper with evidence. Id. ¶ 26. All three were arrested that day and placed on unpaid administrative leave. Id.

Turner alleges that Williams had him arrested because Williams wanted a different individual to be elected sheriff of Nassau County. Id. ¶¶ 29–32. Further, Turner alleges that other individuals with similar conduct were treated differently. Id. ¶¶ 35–39. In August 2017, the state attorney dropped the charges against Turner. Id. ¶ 33. The following day, Turner submitted his written resignation because allegedly JSO "[r]epresentatives" "made clear" that if he continued to work for JSO he would spend the rest of his career answering telephones. Id. ¶ 34.

While Turner was on unpaid administrative leave, he attempted to obtain a retired deputy identification card from Nassau County—which he had not previously sought because he was employed by JSO—but his request was denied. Id. ¶ 40. Turner alleges that Williams and Leeper "agreed to take all actions necessary to assure Plaintiff's defeat in the 2020 election." Id. ¶ 31. Moreover, Turner alleges that on February 15, 2018, he requested that Nassau County permit him to conduct the shooting qualification that is required to

continue carrying a firearm as a retired deputy, but that his request was denied. Id. ¶ 41.

Turner originally filed his action in state court, but Defendants Williams and JSO removed the case. (Doc. 1). Turner subsequently filed an Amended Complaint asserting eight claims: First Amendment Retaliation under 42 U.S.C. § 1983 against JSO (Count I); First Amendment Retaliation under § 1983 against Williams (Count II); First Amendment Retaliation under § 1983 against Nassau County (Count III); First Amendment Retaliation under § 1983 against Leeper (Count IV); Florida common law civil conspiracy against Williams and Leeper (Count V); Conspiracy to interfere with Civil Rights under § 1985 against Williams and Leeper (Count VI); Florida false imprisonment and arrest against JSO (Count VII); and Florida false imprisonment and arrest against Williams (Count VIII). Williams and JSO (Doc. 9) and Leeper and Nassau County (Doc. 8) moved to dismiss all counts against them. Turner responded in opposition to both motions, (Docs. 17, 18), but withdrew Count IV, (Doc. 17).

## II. LEGAL STANDARD

A complaint must contain a short plain statement showing the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). However, "a plaintiff's

obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555. The complaint's factual matter, which is accepted as true, must be "plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678.

The Eleventh Circuit has also repeatedly lectured that shotgun complaints violate the federal pleading rules. <u>Weiland v. Palm Beach Cty. Sheriff's Office</u>, 792 F.3d 1313, 1321–23 (11th Cir. 2015). In <u>Weiland</u>, Chief Judge Carnes identified four types of shotgun complaints:

> The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is

brought against.

Id. at 1321–23 (footnotes omitted). "Relevant to the case at bar, a shotgun complaint also may 'begin with a long list of general allegations' that are later 'incorporated by reference into each count of the complaint.'" Boswell v. Gee, No. 8:18-cv-1769-T-17AEP, 2019 WL 3718206, at *2 (M.D. Fla. Aug. 6, 2019) (quoting Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc., 162 F.3d 1290, 1333 (11th Cir. 1998)). "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Weiland, 792 F.3d at 1323.

## III. DISCUSSION

### A. The Amended Complaint is a Shotgun Pleading

"In the Amended Complaint, Plaintiff includes a lengthy '[Background] Facts' section with detailed factual allegations regarding his employment history with Defendant[s]. This is all well and good, insofar as it goes, but when he reaches the individual counts, Plaintiff reincorporates all of these background facts and then alleges the elements of his claims in vague and conclusory terms." Smith v. City of Atl. Beach, No. 3:18-CV-1459-J-34MCR, 2019 WL 2330470, at *2 (M.D. Fla. May 31, 2019). Here, Turner incorporates all of his factual allegations into each count and fails to identify which allegations form the basis of his different causes of action. For example, it is

unclear under Count I whether Turner is alleging that only the arrest was the retaliatory action, or if the arrest and the threat that Turner would be relegated to "teleserve" were both separate retaliatory actions. (Doc. 7 ¶ 50). "Indeed, in previous cases involving Plaintiff's counsel, this Court and the court of appeals have noted the problems created at summary judgment by the vague and conclusory manner in which she drafts her pleadings." Smith, 2019 WL 2330470, at *2 n.4 (compiling cases). Thus, notwithstanding the additional deficiencies identified below, if Plaintiff files a second amended complaint, it must connect specific factual allegations with the elements for each cause of action.

### B. First Amendment Retaliation

Turner alleges that JSO, Williams, and Nassau County all retaliated against him for exercising his First Amendment rights—specifically for stating his intention to run for sheriff of Nassau County.

"'[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." Nieves v. Bartlett, 139 S. Ct. 1715, 1722 (2019) (quoting Hartman v. Moore, 547 U.S. 250, 256 (2006)). "To state a § 1983 First Amendment retaliation claim, a plaintiff generally must show:" (1) that the plaintiff engaged in constitutionally protected speech; (2) the defendant took retaliatory action that adversely affected that protected speech; and (3) a causal connection between the

defendant's retaliatory conduct and the adverse effect on the plaintiff's speech. DeMartini v. Town of Gulf Stream, 942 F.3d 1277, 1289 (11th Cir. 2019) (citing Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005)). Showing injury alone is insufficient, the retaliatory motive must be the "but-for" cause of the adverse action. Nieves, 139 S. Ct. at 1722.

In each of his three First Amendment retaliation claims, Turner alleges that his protected speech was his "communicating to everyone he knew, and specifically within [JSO and Nassau County], his intention to run for the position of sheriff of Nassau County in 2020." (Doc. 7 ¶ 12). Defendants assert that "a person's interest in seeking public office is not entitled to [c]onstitutional protection." (Docs. 8 at 5; 9 at 10 (both citing Sharp v. City of Palatka, 529 F. Supp. 2d 1354, 1363 (M.D. Fla. 2007)). Assuming, arguendo, that Sharp stands for what Defendants claim it does, it is no longer good law. The law of the Eleventh Circuit is that individuals have a First Amendment right to candidacy.[3] Randall v. Scott, 610 F.3d 701, 713 (11th Cir. 2010) (finding that

---

[3] The Court notes a split on this issue. See Cook v. Popplewell, 394 S.W.3d 323, 336 (Ky. 2011) (critiquing Randall and holding: "But the essential act of becoming a candidate and the condition of being a candidate for elective office are, in the final analysis, no more of an exercise of First Amendment liberty than applying for a job."); see also, e.g., Greenwell v. Parsley, 541 F.3d 401, 404 (6th Cir. 2008) (holding that "the simple announcement of a candidacy" is not protected speech); Newcomb v. Brennan, 558 F.2d 825, 828 (7th Cir. 1977) ("[S]eeking office, by itself, is not entitled to constitutional protection[,]" but that viewpoints expressed as a candidate are entitled to protection).

running against boss's husband for chairman of county commissioners was protected speech). Thus, Turner has alleged protected speech.

Turner has alleged different retaliatory acts—the second element—for the different defendants: false arrest by Williams and JSO and refusal to provide retired deputy identification and an opportunity to requalify on its shooting range by Nassau County. Each of these alleged actions are discussed in more detail below.

For the third element—a causal connection—the Supreme Court has developed different standards based on the type of First Amendment retaliation claim. See, e.g., Nieves, 139 S. Ct. at 1727 (holding that in retaliatory arrest cases, plaintiff must allege and prove an absence of probable cause unless he can show similarly situated individuals who did not engage in protected speech were not arrested); Lozman v. City of Riviera Beach, 138 S. Ct. 1945, 1954 (2018) (finding that retaliatory arrest cases against municipalities can proceed without showing an absence of probable cause if there is an official policy of retaliation); Hartman, 547 U.S. at 265–66 (requiring plaintiff to plead an absence of probable cause in retaliatory prosecution cases); Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 286 (1977) (holding that defendant is not liable if it would have taken same adverse action had there been no protected speech); see also DeMartini, 942 F.3d at 1298 (analyzing Supreme Court First Amendment retaliation precedent). Generally speaking,

these cases can be put into two broad categories: (1) adverse action cases normally, but not exclusively, arising in the employment context, and (2) cases where "the governmental defendant has utilized the legal system to arrest or prosecute the plaintiff . . . ." DeMartini, 942 F.3d at 1289. This case focuses on the second category.

The second category of cases is more nuanced, and the standard varies based on the type of retaliatory action (i.e. retaliatory arrest or prosecution) and the type of government actor (whether the defendant is a government entity or an individual). For each subset, the general rule is that the absence of probable cause is required for the claim to proceed.[4] Nieves, 139 S. Ct. at 1723–27. However, when the claim is for a retaliatory arrest against a municipality, the plaintiff need not prove an absence of probable cause if he can show that the municipality had an official policy to retaliate against him. Lozman, 138 S. Ct.

---

[4] Although precedent has created a different standard for retaliatory arrest and retaliatory prosecution cases, this case would better align with the reasoning used in Hartman—a retaliatory prosecution claim. "[I]n retaliatory prosecution cases, the causal connection between the defendant's animus and the prosecutor's decision to prosecute is weakened by the 'presumption of regularity accorded to prosecutorial decisionmaking.'" Lozman, 138 S. Ct. at 1953 (quoting Hartman, 547 U.S. at 263). Here, Turner was arrested pursuant to a warrant issued by a magistrate—similarly weakening "the link between the defendant's retaliatory animus and the plaintiff's injury . . . ." Id. Thus, under these circumstances, probable cause should bar Turner's claim against Williams individually. However, regardless of which standard is applied, the law was not clearly established at the time and Williams is entitled to qualified immunity. See infra pp. 21–22.

at 1954. In cases where a plaintiff alleges retaliatory arrest against an individual officer, probable cause bars the suit unless the plaintiff can demonstrate that other similarly situated individuals who did not engage in protected speech were not arrested. Nieves, 139 S. Ct. at 1727.

Moreover, individual government defendants can still avoid liability via qualified immunity. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Reichle v. Howards, 566 U.S. 658, 664 (2012). If a defendant was acting within his discretionary authority, then the plaintiff must demonstrate that the government actor violated a clearly established constitutional right. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). And when the government defendant is a supervisor, the plaintiff's claim must allege more than a theory of respondeat superior. Henley v. Payne, 945 F.3d 1320, 1331 (11th Cir. 2019). Instead, the plaintiff must allege that the supervisor personally participated in the unconstitutional conduct or that "there is a causal connection between [the] supervisor's actions and the alleged constitutional violation." Id. (quotations omitted) (quoting Piazza v. Jefferson Cty., 923 F.3d 947, 957 (11th Cir. 2019)).

### 1. Whether there was probable cause to arrest Turner.

For each First Amendment retaliatory arrest claim, the threshold inquiry is whether the plaintiff has pleaded an absence of probable cause. See Nieves, 139 S. Ct. at 1727; Lozman, 138 S. Ct. at 1954. Probable cause is determined by "whether, at the time of the arrest, 'the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" Huebner v. Bradshaw, 935 F.3d 1183, 1187 (11th Cir. 2019) (alteration adopted) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)). Although arresting officers must conduct a reasonable investigation, they "need not take 'every conceivable step . . . at whatever cost, to eliminate the possibility of convicting an innocent person.'" Rankin v. Evans, 133 F.3d 1425, 1435–36 (11th Cir. 1998) (alterations in original) (quoting Tillman v. Coley, 886 F.2d 317, 321 (1989)). "Simply stated, [the probable cause] standard requires that an arrest be objectively reasonable under the totality of the circumstances." Bailey v. Bd. of Cty. Comm'rs of Alachua Cty., 956 F.2d 1112, 1119 (11th Cir. 1992). Further, subject to exceptions not pled here, "[g]reat deference is accorded to the magistrate's determination of probable cause." United States v. Gonzalez, 940 F.2d 1413, 1419 (11th Cir. 1991) (citing United States v. Leon, 468 U.S. 897, 914 (1984)).

Florida's evidence tampering statute—which Turner was arrested for violating—states:

> (1) No person, knowing that a criminal trial or proceeding or an investigation by a duly constituted prosecuting authority, law enforcement agency, grand jury or legislative committee of this state is pending or is about to be instituted, shall:
>> (a) Alter, destroy, conceal, or remove any record, document, or thing with the purpose to impair its verity or availability in such proceeding or investigation;

§ 918.13, Fla. Stat. (2019).

Reviewing the statute and the facts alleged, assuming them as true for purposes of a motion to dismiss, probable cause existed to arrest Turner and his team for tampering with evidence. While undercover, Turner shot and killed an individual who had pointed a handgun directly at his head. (Doc. 7 ¶ 19). Immediately after the shooting, the trainee team member asked if he should dispose of the beer in the undercover police vehicle, to which Turner replied "yeah." Id. ¶ 21. The trainee threw the beer into a nearby yard. Id. This information is sufficient to lead a "prudent man" to believe that Turner, who knew JSO was going to investigate the officer-involved shooting, had conspired to conceal or remove the beer to "impair its . . . availability" in the JSO investigation. See § 918.13; Huebner, 935 F.3d at 1187. That Turner informed investigators that there was beer in the car, that the beer was allegedly authorized by JSO policy, and that Turner believes the beer was not evidence are irrelevant to the probable cause determination.

13

Moreover, this is not a situation where Turner was arrested at the scene. As alleged, the matter was investigated by JSO's Integrity Division, which secured warrants for all three officers involved. (Doc. 7 ¶ 26). Although not dispositive, a warrant favors a finding of probable cause.[5] See Gonzalez, 940 F.2d 1419. Accordingly, as pled, JSO had probable cause to arrest Turner. Thus to proceed, he must demonstrate that JSO had an official policy to retaliate against him (Count I) and that he was treated differently than other similarly situated persons (Count II).

2. Turner has failed state a First Amendment
retaliation claim against JSO (Count I).

In Count I, Turner alleges that Sheriff Williams, in his official capacity, had Turner arrested in retaliation for Turner announcing his intent to run for Nassau County sheriff. A sheriff sued in his official capacity is effectively an action against the governmental entity the sheriff represents, in this case the City of Jacksonville. Barnett, 2020 WL 1870445, at *3. A municipality, such as Jacksonville, is considered a person under § 1983, but its liability is limited to situations where a municipal policy caused the deprivation of rights. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978) (holding that a municipality

---

[5] Turner argues that an arrest warrant based on intentionally-submitted incorrect facts is void. (Doc. 18 at 3–4). Although an affidavit containing false material facts can invalidate a warrant, the Amended Complaint contains no allegations that the warrant to arrest Turner was falsely procured.

cannot be held vicariously liable under § 1983); see City of Canton v. Harris, 489 U.S. 378, 385 (1989). A municipal policy can be in the form of: (1) a written policy; (2) a custom, which is "a practice so settled and permanent that it takes on the force of the law[;]" (3) a decision by someone with final decision making authority; or (4) a policy of inadequate training or supervision, all of which must cause the alleged deprivation of constitutional rights. McDowell v. Brown, 392 F.3d 1283, 1290 (11th Cir. 2004).

In Lozman, the Supreme Court held that probable cause would not bar a retaliatory arrest claim against a municipality that created and enforced an official policy motivated by retaliation. 138 S. Ct. at 1954. The Eleventh Circuit has examined Lozman in depth, determining that this probable cause exception applied only "when the 'unique' five factual circumstances in Lozman exist together . . . ." DeMartini, 942 F.3d at 1297. Those five factual circumstances are:

> (1) plaintiff Lozman had alleged "more governmental action than simply an [officer's] arrest" because he claimed that the City "itself retaliated against him pursuant to an 'official municipal policy' of intimidation"; (2) the plaintiff had alleged that the City's retaliation plan was "premeditated" and formed months earlier (before the arrest); (3) the plaintiff had "objective evidence" of a policy motivated by retaliation, as he had a transcript of a closed-door meeting where a Councilmember stated that the City should use its resources to "intimidate" Lozman and others who filed lawsuits against the City; (4) there was less of a concern about the causation problem and opening the floodgates of frivolous retaliation claims because the City's official policy of retaliation was formed months earlier, there was little relation between the

"protected speech that prompted the retaliatory policy and the criminal offense (public disturbance) for which the arrest was made," and "it was unlikely that the connection between the alleged animus and injury will be weakened by an official's <u>legitimate</u> consideration of speech"; and (5) the plaintiff's speech—the right to petition—was "one of the most precious of the liberties safeguarded by the Bill of Rights" and was "high in the hierarchy of First Amendment values."

<u>DeMartini</u>, 942 F.3d at 1294 (citing <u>Lozman</u>, 138 S. Ct. at 1949, 1954–55). Although neither <u>Lozman</u> nor <u>DeMartini</u> were decided at the pleading stage, Turner's allegations must still support reasonable inferences that the <u>Lozman</u> exception should apply. Further, even if the <u>Lozman</u> exception applies, the <u>Mt. Healthy</u> test kicks in, and the city is not liable if it can show it would have taken the same action regardless of the protected speech. <u>Lozman</u>, 138 S. Ct. at 1955.

JSO had probable cause to arrest Turner for conspiracy to tamper with evidence; thus, Turner must show that the <u>Lozman</u> exception—that JSO had an official policy to retaliate against him for his protected speech—should apply. <u>See</u> <u>DeMartini</u>, 942 F.3d at 1294 (citing <u>Lozman</u>, 138 S. Ct. at 1954–55). But Turner fails to allege an official policy of retaliation. The Amended Complaint contains only conclusory allegations that Williams was a final decisionmaker and that JSO had a custom of engaging in similar wrongful behavior. Neither conclusory allegation is supported by factual content. <u>See</u> <u>Iqbal</u>, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Assuming, <u>arguendo</u>, that Williams is a final decision maker under state law, Turner has not alleged any specific decision by Williams that caused his constitutional deprivation. "[M]unicipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 480 (1986). However, "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." <u>Id.</u> at 481 (plurality opinion). As Turner was arrested under a warrant, Williams was not the final approving authority of the arrest, <u>see</u> §§ 901.01 et seq. (authorizing judicial officers to issue arrest warrants); 30.15 (outlining the duties and powers of sheriffs), nor is it alleged that he did so.

Additionally, Turner fails to allege a custom that JSO routinely arrested individuals for the purpose of deterring protected speech. Turner argues that he alleged a custom:

> The actions by and on behalf of Defendant JAX SHERIFF set forth in this count were not unique events of the violations set forth herein. On information and belief, further similar events of wrongful actions on the part of Defendant JAX SHERIFF and/or its employees or agents have taken place, such events combining to determine a pattern of similar wrongful and illegal behavior.

(Doc. 7 ¶ 59). But this allegation is the definition of conclusory. <u>See</u> <u>McCullough v. Bd. of Regents of the Univ. Sys. of Ga.</u>, 623 F. App'x 980, 983 (11th Cir. 2015) (holding that plaintiff's allegation "upon information and belief" without

additional allegations of a causal connection was insufficient "to raise his allegations of retaliation above the speculative level."). Further, Turner does not allege that JSO had "a practice so settled and permanent that it [took] on the force of the law . . . ." McDowell, 392 F.3d at 1290. Moreover, Turner's argument that a generalized pleading of a policy or custom is sufficient to withstand a motion to dismiss and permit discovery is not well taken. See Doc. 18 at 12. One of the cases Turner relies upon refutes his argument: "[D]iscovery follows a well-pleaded complaint; not the other way around. Because [the plaintiff's] complaint does not allege any unconstitutional policy or custom, the court did not err in dismissing [the plaintiff's] municipal liability claim against the County." Carter v. DeKalb Cty., 521 F. App'x 725, 729 (11th Cir. 2013). This statement does not mean that Turner can simply allege that JSO had a policy of unconstitutional retaliatory actions—he must allege what the policy was. See id.

Moreover, as pled, this case does not have the same five unique factual circumstances present in Lozman. The Supreme Court limited Lozman to its facts because it was a unique case. 138 S. Ct. at 1954–55. Lozman had acquired the transcript of a closed-door city council meeting where a member said the City should intimidate Lozman and others who filed lawsuits against it months earlier. Id. Then, the city council had Lozman arrested at one of its public meetings. Id.

The facts here are materially different. The Amended Complaint makes no allegations that Williams, individually or through his policies as sheriff, directed that Turner be arrested, investigated, or otherwise retaliated against. Turner was involved in an incident that required a JSO investigation. (Doc. 7 ¶ 24). The Integrity Division investigated the incident and secured arrest warrants for Turner and the two other members of his team. Id. ¶ 26. The causal chasm between Turner's hearsay allegation that Williams was going "to take all actions necessary to assure [Turner's] defeat in the 2020 election" and Turner's arrest renders this case materially different from Lozman. Id. ¶ 31; 138 S. Ct. 1954–55; DeMartini, 942 F.3d at 1294. Lastly, even if Turner could show that Lozman should apply, his Amended Complaint does not satisfy the Mt. Healthy test because it is clear JSO would have taken the same actions irrespective of Turner's protected speech—a fact evident from the arrest of the other two officers involved. See Lozman, 138 S. Ct. at 1955 ("On facts like these, Mt. Healthy provides the correct standard for assessing a retaliatory arrest claim."). Therefore, Turner's claim for First Amendment retaliation against Williams in his official capacity shall be dismissed.

### 3. The First Amendment retaliation claim against Williams individually (Count II) should be dismissed.

Turner alleges that Williams had Turner arrested in retaliation for announcing his intention to run for sheriff of Nassau County. "Although

probable cause should generally defeat a retaliatory arrest claim, a narrow qualification is warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." <u>Nieves</u>, 139 S. Ct. at 1727. Thus, a plaintiff's retaliatory arrest claim against an individual officer can proceed when the plaintiff shows an absence of probable cause or "presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." <u>Id.</u> As the Supreme Court explained:

> For example, at many intersections, jaywalking is endemic but rarely results in arrest. If an individual who has been vocally complaining about police conduct is arrested for jaywalking at such an intersection, it would seem insufficiently protective of First Amendment rights to dismiss the individual's retaliatory arrest claim on the ground that there was undoubted probable cause for the arrest.

<u>Id.</u>

Here, Turner's claim against Williams (individually) fails for three reasons. First, Turner's allegations that Williams was involved in the arrest are conclusory. (Doc. 7 ¶¶ 32, 70, 74, 76). Besides Turner's speculative allegation that Williams "personally participated in adverse actions against Plaintiff in violation of First Amendment right to free speech[,]" there are no facts demonstrating that Williams even knew about the arrest before it took place— never mind that he somehow participated in it. <u>See</u> <u>Henley</u>, 945 F.3d at 1331 (requiring plaintiff to show that a supervisor personally participated in the

alleged unconstitutional action or a causal connection between the supervisor's actions and the unconstitutional act).

Second, Turner fails to allege that he was treated differently than other similarly situated persons. See Nieves, 139 S. Ct. at 1727. In fact, Turner alleges that the other two individuals on his team, who did not engage in protected speech, were also arrested—belying the conclusory allegations that Turner was treated differently in like circumstances. (Doc. 7 ¶ 26).

Third, and decisively, at the time of Turner's arrest, it was not clearly established that an arrest made with probable cause could nonetheless subject a government actor to liability for First Amendment retaliation.[6] See Nieves, 139 S. Ct. at 1727; Lozman, 138 S. Ct. at 1954; Reichle, 566 U.S. at 664 (finding that the law was not clearly established by the Supreme Court). Two recent, albeit unpublished, Eleventh Circuit decisions solidify this point. Quick v. Geddie, 763 F. App'x 909, 915 (11th Cir. 2019); Alston v. City of Darien, 750 F. App'x 825, 835 (11th Cir. 2018). In Alston, the Eleventh Circuit concluded: "As for Alston's claim that Brown violated his First Amendment rights by arresting him based on his constitutionally protected speech, this claim also fails. At the time of Alston's arrest, there was no clearly established 'right to be free from a retaliatory arrest that [was] otherwise supported by probable cause.'" Alston,

---

[6] Investigating potential crimes by police officers is an act within a sheriff's discretionary authority.

750 F. App'x at 835 (quoting <u>Reichle</u>, 566 U.S. at 665). And in <u>Quick</u>, the Eleventh Circuit held that the law was not clearly established because the standard governing First Amendment retaliatory arrest claims had changed between the alleged unconstitutional arrest and the time the case reached the Eleventh Circuit. <u>Quick</u>, 763 F. App'x at 915. The court stated:

> When Trooper Geddie arrested Quick, the governing law provided that, "when an officer has arguable probable cause to arrest, he is entitled to qualified immunity . . . from First Amendment claims stemming from the arrest." It was roughly two years later that the Supreme Court held [in <u>Lozman</u>] . . . that an arrestee may prevail on a civil claim for damages for a retaliatory arrest, even if there was probable cause for the arrest . . . .

<u>Id.</u> (citations omitted). Thus, at earliest, the law was clearly established by <u>Lozman</u> in 2018, but that is unlikely given the Supreme Court's limitation of that case to its facts. 138 S. Ct. at 1955. Instead, it was not clearly established until <u>Nieves</u>, that an officer could be liable for an alleged retaliatory arrest under these circumstances. Because <u>Nieves</u> was decided two years after the events in question here, Williams is entitled to qualified immunity on Count II.

### 4. Turner's First Amendment retaliation claim against Nassau County (Count III) fails.

Turner appears to allege that Nassau County retaliated against him by declining to provide him with retired deputy identification and refusing to allow him to take his firearm requalification on its range. However, Turner's claim fails because: (1) he has not alleged facts to support Nassau County had an

official policy to retaliate against him; (2) he has not alleged an adverse action; and (3) he has not alleged that any adverse action was caused by Turner's alleged protected speech.

First, Turner makes only conclusory allegations that Nassau County had a policy to retaliate against him. This point is exemplified in Turner's response to Nassau County's motion to dismiss. There, Turner, instead of demonstrating how he alleged that Nassau County had an official policy of retaliating against him, incorporates his arguments in response to JSO's contention that Turner failed to allege a policy or custom. (Doc. 17 at 9). But, JSO and Nassau County are two different entities and allegedly engaged in different retaliatory acts; therefore, each would need to have its own policy or custom of retaliation.

Second, Turner has not alleged an adverse action. As to Nassau County, this case does not involve an employment decision, an arrest, or a prosecution. Thus, a different standard applies. Where, as here, the plaintiff is a private citizen, he "suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Bennett, 423 F.3d at 1254. "And 'since there is no justification for harassing people for exercising their constitutional rights,' the adverse effect 'need not be great.'" Echols v. Lawton, 913 F.3d 1313, 1323 (11th Cir. 2019) (quoting Bennett, 423 F.3d at 1254). However, "government officials should not be liable when the plaintiff is unreasonably weak-willed or suffers

only a 'de minimis inconvenience to her exercise of First Amendment rights.'" Bennet, 423 F.3d at 1252 (quoting Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005)).

Here, Turner fails to allege an adverse action because being denied the retired deputy identification and the opportunity to conduct a firearm requalification are de minimis inconveniences. See Bennet, 423 F.3d at 1252. Neither are required by federal or state law. See Burban v. City of Neptune Beach, 920 F.3d 1274, 1280 (11th Cir. 2019) ("We thus conclude that no provision of § 926C[, titled 'Carrying of concealed firearms by qualified retired law enforcement officers,'] compels a State to issue identification."); § 112.193(2), Fla. Stat. (stating that law enforcement employers "may" provide a retired law enforcement identification card); Fla. Admin. Code R. 11B-27.014 ("Neither state law nor the [federal act] provide a retiree with a right to demand access to a range or an opportunity to attempt the course of fire."). Contrary to the cases cited by Turner, this action is different from revoking an individual's right to carry a firearm. See Doc. 17 at 7–8. Nassau County's actions in no way inhibit Turner from applying for a concealed carry permit like any other Florida citizen. Accordingly, being denied identification to which one is not entitled, does not reasonably "deter a person of ordinary firmness" from expressing a desire to run for sheriff. See Bennett, 423 F.3d at 1254.

Lastly, Turner has not alleged that his intention to run for sheriff caused Nassau County to refuse to provide him with retired deputy identification. In response to this argument, Turner asserts that the temporal proximity between his announcement of an intention to run for sheriff and <u>his arrest</u> is sufficient to satisfy his causation pleading obligation. (Doc. 17 at 8–9 (citing <u>Purvines v. City of Crestview</u>, No. 3:15-CV-326/MCR/EMT, 2016 WL 5844868, at *4 (N.D. Fla. Sept. 30, 2016))). Additionally, Turner contends that causation is an issue that should be decided on summary judgment, not on the pleadings. <u>Id.</u> (citing <u>Brungart v. BellSouth Telecomms., Inc.</u>, 231 F.3d 791, 799 (11th Cir. 2000)).

Turner is incorrect on both assertions. First, Turner was not arrested by Nassau County, so the temporal proximity between his arrest by JSO and his alleged protected speech is irrelevant. Second, it is unclear if the temporal proximity rule applies outside of employment adverse action cases. <u>See Brungart</u>, 231 F.3d at 799 (discussing FMLA retaliation prima facie case). Third, even assuming it does apply to a sheriff's refusal to provide retired deputy identification, the temporal proximity is not close. <u>See Laird v. Bd. of Cty. Comm'rs</u>, No. 3:15-cv-394-MCR-CJK, 2017 WL 1147472, at *7 (N.D. Fla. Mar. 26, 2017) ("But mere temporal proximity, without more, must be 'very close.'" (quoting <u>Thomas v. Cooper Lighting, Inc.</u>, 506 F.3d 1361, 1364 (11th Cir. 2007)). In <u>Laird</u>, the court concluded that the temporal proximity was insufficient where seven months passed between the protected speech and

alleged retaliatory action. Id. Here, Turner alleges he began telling "everyone" in the summer of 2016 that he was going to run for sheriff, (Doc. 7 ¶ 12), but Nassau County did not deny the identification and opportunity to requalify until February of 2017 and 2018, respectively, id. ¶¶ 40–41. This is too great of a time span to infer causation based solely on temporal proximity.[7] See Laird, 2017 WL 1147472, at *7.

Contrary to Turner's assertions, a district court is permitted to dismiss a § 1983 First Amendment retaliation claim if the complaint fails to sufficiently allege causation. See Carruth v. Bentley, 942 F.3d 1047, 1061 (11th Cir. 2019) ("As we've noted already, we agree with the district court's causation analysis and in fact conclude that it requires dismissal of all of Carruth's § 1983 claims.").[8] Absent anything beyond conclusory allegations, Turner fails to allege a causal link between his protected speech and Nassau County's alleged

---

[7] Turner argues that only two weeks elapsed between when Williams announced his support for a different candidate and Turner's arrest. (Doc. 17 at 8). However, neither of these actions have anything to do with Nassau County and its refusal to provide Turner with his requested identification.

[8] Turner misrepresents the quote he relies upon from Purvines. In its entirety, the sentence states: "These disputed factual questions about causation are more appropriate for determination on summary judgment, with a fully developed factual record supporting the parties' positions, than at this early stage where the court only considers the allegations in Plaintiffs' Amended Complaint." Purvines, 2016 WL 5844868, at *4; (Doc. 17 at 8–9). The cherry-picked quote omits the underlined portion of the sentence, which limits the general proposition that follows. Counsel should be more careful.

retaliatory actions. Thus, Count III against Nassau County is due to be dismissed.

### C. Civil Rights Conspiracy

Turner alleges that Williams and Leeper engaged in a conspiracy to violate his First Amendment rights in violation of 42 U.S.C. § 1985(3).

> To state a claim under § 1985(3), a plaintiff must allege: (1) defendants engaged in a conspiracy; (2) the conspiracy's purpose was to directly or indirectly deprive a protected person or class the equal protection of the laws, or equal privileges and immunities under the laws; (3) a conspirator committed an act to further the conspiracy; and (4) as a result, the plaintiff suffered injury to either his person or his property, or was deprived of a right or privilege of a citizen of the United States.

Jimenez v. Wellstar Health Sys., 596 F.3d 1304, 1312 (11th Cir. 2010). Section 1985(3) only provides First Amendment protection where "the state was somehow involved in or affected by the conspiracy." United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott, 463 U.S. 825, 833 (1983). Turner has sufficiently alleged that Williams and Leeper were state actors. See Lyes v. City of Riviera Beach, 166 F.3d 1332, 1340 (11th Cir. 1999) (en banc) (holding that conspiracies under color of state law are actionable).

Turner alleges that Williams and Leeper conspired to deprive him of his civil rights. Assuming, without deciding, that Turner alleges (1) a conspiracy, (3) overt acts in furtherance, and (4) injury, he has not, and cannot, satisfy the second element: "(2) the conspiracy's purpose was to directly or indirectly

deprive a protected person or class the equal protection of the laws, or equal privileges and immunities under the laws . . . ." <u>Jimenez</u>, 596 F.3d at 1312. The second element requires that Turner allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." <u>United Bhd.</u>, 463 U.S. at 834–35 (quoting <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 102 (1971)). "Thus, a plaintiff must allege both that the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious." <u>Farber v. City of Paterson</u>, 440 F.3d 131, 135 (3d Cir. 2006) (citing <u>Aulson v. Blanchard</u>, 83 F.3d 1, 4–5 (1st Cir. 1996)).

Turner argues that he does not need to "allege—and subsequently prove—that Sheriff Williams violated his constitutional rights based upon race, age, gender or any class-based discriminatory animus." (Doc. 18 at 19). This statement misapprehends the law. Accepting all of Turner's allegations as true, he cannot state a claim for a § 1985(3) conspiracy because the alleged retaliatory actions were not taken against an identifiable class. <u>Cf.</u> <u>United Bhd.</u>, 463 U.S. at 833 ("[I]t is a close question whether § 1985(3) was intended to reach any class-based animus other than animus against Negroes and those who championed their cause . . . ."). The Supreme Court and circuit courts have been reluctant to expand the definition of class beyond those that are race-based.

<u>Bray v. Alexandria Women's Health Clinic</u>, 506 U.S. 263, 269 (1993). As the Supreme Court stated:

> [The term class] unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors. Otherwise, innumerable tort plaintiffs would be able to assert causes of action under § 1985(3) by simply defining the aggrieved class as those seeking to engage in the activity the defendant has interfered with. This definitional ploy would convert the statute into the "general federal tort law" it was the very purpose of the animus requirement to avoid.

<u>Id.</u>

Courts are split on whether political affiliation, which Turner has not sufficiently alleged in any event, is an acceptable class. The Court found no case upholding a class of persons merely supporting particular candidates or causes. <u>Cf., e.g.</u>, <u>Farber</u>, 440 F.3d at 136–38 (holding that city employees who were fired for supporting former administration in election did not comprise identifiable class under § 1985(3)); <u>Aulson</u>, 83 F.3d at 4–5 (affirming dismissal of complaint where class alleged was "composed solely of persons who support candidates opposed to the politics of the 'old guard,' and that the defendants are members of the 'old guard.'"); <u>Dean v. Olens</u>, No. 1:18-CV-4224-TCB, 2019 WL 8017734, at *6 (N.D. Ga. Feb. 7, 2019) (finding the law in the Eleventh Circuit to be unsettled and dismissing plaintiff's complaint because "membership in a political class, i.e., that class of people 'protesting police brutality against African Americans.'" is indeterminate and invalid for § 1985(3) purposes).

Nonetheless, the Court need not go into a lengthy analysis about whether Turner is part of a class deserving protection under § 1985(3) because even if he is—which is highly doubtful—the law is not clearly established. Ziglar v. Abbasi, 137 S. Ct. 1843, 1868 (2017) (granting qualified immunity in § 1985(3) claim). No Supreme Court, Eleventh Circuit, or Florida Supreme Court case has allowed a class of the type Turner purports to be a part of. See Dean, 2019 WL 8017734, at *4 ("[W]hich classes of persons are and are not protected varies among the circuit courts of appeals, and Supreme Court guidance is relatively sparse."). Because of the split on whether political affiliation is a protected class under § 1985(3), see, e.g., Farber, 440 F.3d at 139 (identifying circuit split and explaining the Supreme Court's "skepticism" in United Brotherhood that 1985(3) was intended to reach anything other than race-based classes), the right was not clearly established, see also Ziglar, 137 S. Ct. at 1868 ("When the courts are divided on an issue so central to the cause of action alleged, a reasonable official lacks the notice required before imposing liability."). Accordingly, Williams and Leeper are entitled to qualified immunity on Count VI.

### C. State Law Claims (Counts V, VII, and VIII)

Turner asserts three state law claims: false arrest against JSO (Count VII) and Williams (Count VIII) and common law conspiracy against Williams and Leeper (Count V).

The false arrest claims are easily disposed of—under Florida law probable cause is a complete bar to a false arrest claim. Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998). And determining whether an officer had probable cause is the same under both Florida and federal law. Id. Although under Florida law probable cause is normally an affirmative defense, because the Court has already determined there was probable cause to arrest Turner, his false arrest claims fail.

Turner's civil conspiracy claim faces a similar fate. Under Florida law, a civil conspiracy claim requires allegations of: "(1) an agreement between two or more parties; (2) to do an unlawful act or to do a lawful act by unlawful means; (3) the doing of some overt act in pursuance of the conspiracy; and (4) damage to plaintiff as a result of the acts done under the conspiracy." Philip Morris USA, Inc. v. Russo, 175 So. 3d 681, 686 n.9 (Fla. 2015). "The gist of a civil action for conspiracy is not the conspiracy itself but the civil wrong which is alleged to have been done pursuant to the conspiracy." Id. (quotation marks omitted) (quoting Loeb v. Geronemus, 66 So. 2d 241, 243 (Fla. 1953)). "[A] cause of action for civil conspiracy exists only if the basis for the conspiracy is an independent wrong or tort which would constitute a cause of action if the wrong were done by one person." SFM Holdings, Ltd. v. Banc of Am. Sec., LLC, 764 F.3d 1327, 1339 (11th Cir. 2014) (alterations adopted) (quotation marks omitted) (quoting Raimi v. Furlong, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997)).

Turner alleges that Williams and Leeper "agreed to take all actions necessary to assure Plaintiff's defeat in the 2020 election." (Doc. 7 ¶ 31). However, there is no non-hearsay allegation that Williams and Leeper ever discussed this issue. <u>Id.</u> Turner further alleges that the underlying actionable torts "include but are not limited to false arrest." <u>Id.</u> ¶ 117. Here, the false arrest claims fail because there was probable cause to arrest Turner. Additionally, Turner has not alleged any overt act by Leeper—and it is not plausible that denying an individual retired deputy identification is an unlawful means of trying to ensure Turner would lose the 2020 election. Thus, Turner's Florida civil conspiracy claim fails. Accordingly, Counts V, VII, and VIII are due to be dismissed.

## IV. CONCLUSION

Although leave to file an amended complaint should be freely given, Fed. R. Civ. P. 15(a), a district court need not give such leave when amendment would be futile. That said, "in this Circuit, a plaintiff usually is allowed at least one chance to amend before a case is dismissed with prejudice." <u>Almanza v. United Airlines, Inc.</u>, 851 F.3d 1060, 1074–75 (11th Cir. 2017). Given the number and materiality of the deficiencies identified above, the Court doubts that Turner will be able to state viable claims in a second amended complaint. Nonetheless, the Court will permit Turner, <u>only</u> if he has a good faith basis to

do so, to file a second amended complaint. If Turner elects not to file such motion, the case will be dismissed with prejudice.

Accordingly, it is hereby

**ORDERED:**

1. Defendant Sheriff Bill Leeper's Motion to Dismiss (Doc. 8) is **GRANTED**.

2. Defendant Sheriff Mike Williams's Motion to Dismiss (Doc. 9) is **GRANTED**.

3. The Amended Complaint is **DISMISSED without prejudice**.

4. Not later than **May 8, 2020**, Plaintiff Bryan Turner, <u>only</u> if he has a good faith basis to do so, may file a second amended complaint.

5. If a second amended complaint is filed, Defendants shall respond by **June 5, 2020**.

6. If Defendants file motions to dismiss, Turner shall respond by **June 26, 2020**. If Defendants file answers, the parties shall file a case management report (Doc. 5-1) by **June 26, 2020**.

7. If Plaintiff chooses not to file a second amended complaint by May 8, 2020, the case will automatically be dismissed with prejudice without further notice.

**DONE AND ORDERED** in Jacksonville, Florida this 17th day of April, 2020.

TIMOTHY J. CORRIGAN
United States District Judge

jjb
Copies to:

Counsel of record